**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| John H. Thompson, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 05 C 2442 |
| -vs- | ) | |
| | ) | SENIOR U.S. DISTRICT JUDGE |
| International Union of Elevator Constructors, | ) | GEORGE W. LINDBERG |
| Local Number 2 | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This case involves a dispute between plaintiffs, John Thompson ("Thompson"), David Rotermund ("Rotermund"), and Douglas Kelly ("Kelly") and their union, the International Union of Elevator Constructors, Local Number 2 (the "Union") in Chicago. Count I arises out of the Union's disciplinary actions taken against Rotermund and Kelly. Specifically, plaintiffs Rotermund and Kelly allege that the Union violated their rights under the Labor-Management Reporting Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(5), which states, "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined . . . unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; [and] (C) afforded a full and fair hearing." Count II alleges that the Union violated Thompson's rights under Section 411(a)(1) of the LMRDA, which provides, "Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections . . . to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and by laws." Count II arises out of the

Union's efforts to exclude Thompson from participating in the Executive Board governance of the Union.

This court has jurisdiction over this case pursuant to Section 412 of the LMRDA, which states that "[a]ny person whose rights secured by the provisions of [the LMRDA] have been infringed by any violation of [the LMRDA] may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate." 29 U.S.C. 412.

## Findings of Fact

In January 2005, the Illinois Elevator Safety Commission drafted a proposal for new elevator safety rules. Frank Christensen ("Christensen"), the Union's principal or chief executive officer at the time, was also the Chairman of the Illinois Elevator Safety Commission, so he wanted these new rules to be approved. In February 2005, Thompson spoke out in opposition to the proposed Illinois Elevator Safety Rules.

On February 25, 2005 Thompson and Christensen had a telephone call in which Christensen indicated that he did not know that Thompson was opposed to the proposed rules and that Thompson should appear before the Union's Executive Board. That same day, the Union sent letters to Thompson, Rotermund, and Kelly that stated, in their entirety, as follows:

> Dear Brother/Sister:
>
> You are hereby directed to appear before the Executive Board on Wednesday, March 2, 2005 at 5:30 p.m., at the Union Hall located at 300 South Ashland, Suite 206, Chicago, Illinois.

None of the plaintiffs appeared before the Executive Board on March 2, 2005. On March 22, 2005, Thompson declared his candidacy for the November election for a position on the

Union's Executive Board. On March 30, however, the Executive Board changed Thompson's status to management, thereby disqualifying him from running for a position on the Executive Board. On April 4, 2005, Thompson, Rotermund, and Kelly all received notices of disciplinary charges that had been filed against them for not following the written and oral directives that directed them to appear at the March 2 Executive Board meeting. These notices apprised all three plaintiffs that a trial would take place on April 26 at 9:00 am to address these charges. The notices also indicated that all Plaintiffs violated Article XVIII, Sec. 1, sub. sec. (3), (6), (8), (12), and (15) of the Union Constitution and Bylaws. These provisions are as follows:

> (3) failure or refusal to adhere to the provisions of the Constitution and By-Laws of a local union;
>
> (6) failure or refusal to abide by an oath taken at the time an individual becomes a member of the International Union or a local union;
>
> (8) engaging in conduct unbecoming a member or officer of the IUEC by any act or acts causing economic harm;
>
> (12) any action which brings or tends to bring the International Union and/or local unions in disrepute with any bodies with which the International Union and/or local unions are affiliated or which may bring or tend to bring the International Union and/or local unions into disrepute with the public or into conflict with the law;
>
> (15) the engaging in conduct which unduly impedes the work of any officer of the International Union and/or local unions.

Twice before the trial, on April 12, 2005 and again on April 19, 2005, Thompson, Rotermund, and Kelly sent letters to the Executive Board requesting that the trial be postponed until 6:30 pm on April 26 (instead of 9:00 am) in order to allow key witnesses to appear, and further requesting more clarity on the nature of the charges against them and a copy of the

current trial manual. The Executive Board denied all of these requests. On April 26, 2005, the trials of Thompson, Rotermund, and Kelly all took place. Charges against Thompson were dropped because the Executive Board deemed him to be management. Rotermund and Kelly were found guilty of violating Article XVIII, Sec. 1, sub. sec. (3), (6), and (8), not guilty of violating Article XVIII, Sec. 1, sub. sec. (15), and charges under Article XVIII, Sec. 1, sub. sec. (12) were dropped. Three thousand dollar fines were imposed on both Rotermund and Kelly.

On June 15, 2005, Rotermund and Kelly appealed the decision to the General Executive Board of the International ("International"), and on August 11, 2005, the International notified them that it would hear their appeal on October 3 in New Hampshire. On November 2, 2005, the International denied Rotermund's and Kelly's appeal, but reduced the fines to $2000. Rotermund and Kelly then appealed the International's decision to the General Convention of the IUEC ("Convention"). That appeal wasn't heard until September 18, 2006 when the Convention met in Hawaii. Plaintiffs' attorney and defense counsel agreed, as suggested by this court, and as entered into on the record in open court, that the payment of all fines be stayed until the final appeal was decided. However, in letters to Rotermund and Kelly announcing its decision, the Convention stated, "It was noted that while you were advised in a letter to you dated Jan. 23, 2006 that . . . the decision shall remain effective for all purposes during the pendency of your appeal, you did not pay the fines imposed in the aforementioned decision." The appeal was denied by the Convention.

Meanwhile, Thompson filed a motion for a preliminary injunction with this court that would prevent the Executive Board from prohibiting Thompson from running for a position on

the Executive Board in the November 2005 election because the Executive Board had declared him management. On October 19, 2005, this court entered a preliminary injunction, enjoining the Union from barring Thompson from running for office, reinstating him to a member in good standing, lifting his management status, and ordering his name to appear on the election ballot for the November 2005 election. After some dispute about whether Thompson's name would appear on the electronic voting machine for the election, Thompson's name did appear on all appropriate ballots, and he won a seat on the Executive Board.

Immediately following the election, Union member Peter Pinoza filed a complaint with the Department of Labor ("DOL") maintaining that Thompson was management. On January 10, 2006, Thompson attended an Executive Committee meeting in his capacity as Executive Committee Member. At the meeting, Christensen (who is not on the Executive Board) continued to claim that Thompson was management. A week later, Dan Baumann ("Baumann"), who filed the original charges against Thompson, Rotermund, and Kelly, told Thompson that he would be declared management and removed from the Union after the injunction was dissolved on February 1, 2006, the same day that the Union was to present its motion to terminate the preliminary injunction. On January 20, 2006, Baumann's brother charged Thompson with various offenses, including slander, under the Union's Constitution and By-Laws Article XV, Sec. (9). Slander was removed as a punishable offense under the Union's Constitution and By-Laws in 2001. Baumann's threats to re-classify Thompson as management persisted. On March 14, 2006, the Union conducted a trial of Thompson on the charges brought by Baumann. One of

05 C 2442

the charges against Thompson was dropped, and he was found not guilty on all others, including the slander charge.

On April 20, 2006 the Financial Day Secretary/Treasurer of the Union, Arnold Elmhorst ("Elmhorst") sent Thompson, Rotermund, and Kelly letters stating, after "reviewing the informational request that was sent to me, I indeed know that Thompson Elevator Consulting, Inc. is in violation of the Master Agreement." The letters directed the plaintiffs to appear before the Executive Board on May 2, 2006 at 5:30 pm, and told them to bring the last three months of pay stubs, time sheets, and a list of jobs that they had been on for the days that they were paid wages. The letters also directed the plaintiffs to call in each and every job that they were working on daily to report: (1) the name of the job; (2) the complete address of the job; and (3) the type of work performed on that job. This letter was followed up a few days later with another letter from Elmhorst threatening disciplinary action for not abiding by the directions in the first letter. Eventually, plaintiffs' counsel became involved in the matter and addressed the reporting issue with defense counsel.

Despite the intervention of counsel for both parties, the Union took actions to terminate its contract with Thompson Elevator Consulting, Inc. ("TECI"), Thompson's, Rotermund's, and Kelly's employer, because the Union believed that TECI was "in violation of the Master Agreement." On June 28, 2006, Elmhorst sent plaintiffs' attorney a letter, once again raising the reporting issues that had previously been resolved with defense counsel. This letter threatened to rescind the agreement between the Union and TECI. The next day, June 29, Elmhorst sent plaintiffs' attorney another letter indicating that Thompson's employer failed to provide

adequate proof of insurance, maintenance logs, and policies regarding vehicular use. Elmhorst demanded that these items be produced on or before July 5, 2006 before 4:30 pm, or he would terminate the Agreement between the Union and TECI. A few days later, Elmhorst sent plaintiffs' attorney yet another letter criticizing TECI's safety policies.

Before 2:00 pm on July 5, 2006, plaintiffs' counsel faxed Elmhorst a letter indicating that all of the requested documentation was produced for the Union's auditor when TECI was audited in August of 2005. In addition, plaintiffs' counsel indicated that the Union could not unilaterally terminate its contract with TECI. On July 6, 2006, plaintiffs' attorney and defendant's attorney spoke via telephone. During that conversation, plaintiffs' attorney indicated that he planned on filing an unfair labor practice charge with the DOL because the Union does not have the authority to unilaterally terminate its contract with TECI. The next day, plaintiffs' counsel received a letter from Elmhorst, dated July 5, 2006, that stated, "Effective today, July 5, 2006, the Contract/Agreement [between the Union and TECI] . . . had been terminated and no further relationship with this company will be maintained." This letter was also sent to the International union and the International Benefit Office to notify them that the benefits and union status of Thompson, Rotermund, and Kelly should be terminated. Elmhorst erroneously claimed that the agreement was terminated because the plaintiffs did not comply with his June 29 letter. Plaintiffs' attorney responded to Elmhorst, indicating, once again, that the Union could not unilaterally terminate its contract with TECI.

On July 11, 2006, the International corrected the Union. The Union's counsel emailed plaintiffs' counsel to "confirm[ ] that the [TECI] agreement remained (and has remained since its

execution) valid and in effect. The July 5, 2006 letter from Financial Day Secretary Elmhorst is withdrawn." Yet, at an Executive Board meeting on July 18, 2006, Christensen reported that the Union had terminated its agreement with TECI. In response, Thompson showed him the July 11 letter. Christensen responded that they would "explore other avenues" to remove Thompson from the Union and from his position on the Executive Board.

On October 17, 2006, the DOL resolved several complaints that the parties filed. The DOL ruled that even though the Union technically violated the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 481, *et seq*. ("LMRDA"), there was no violation that ultimately affected the outcome of the Executive Board election. The DOL also found no evidence to indicate that Thompson was management.

On December 19, 2006, the Union barred Rotermund and Kelly from the general membership meeting, claiming that they could not participate because they had not yet paid the fines imposed upon them, despite the agreement of the Union's attorney to stay those fines until the resolution of this pending lawsuit. As late as January 3, 2007, Thompson stood trial for yet another disciplinary charge brought by the Union's President, John Valone ("Valone"). During the trial, Valone told the Executive Board that he filed charges against Thompson because the Union did not want dissent among its officers when facing contract negotiations.

**Analysis**

In Count I of their complaint, plaintiffs Rotermund and Kelly allege that the Union violated their rights under the LMRDA by disciplining them without serving them with specific written charges, without giving them a reasonable time to prepare their defense, and without

05 C 2442

affording them a full and fair hearing. Rotermund and Kelly request this court to grant them a permanent injunction which would prevent the Union from enforcing the convictions and fines against them, and declare their convictions null and void. As the Supreme Court has stated, "[A]n injunction is an equitable remedy that does not issue as [a matter] of course." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 553 (1987). A plaintiff seeking a permanent injunction must satisfy a four-factor test before this type of relief is granted. *eBay, Inc. v. MercExhcange, L.L.C.*, 126 S.Ct. 1837, 1839 (2006). Specifically, plaintiffs must demonstrate: (1) success on the merits of their claim; (2) that remedies available at law are inadequate to compensate for their injury; (3) that the benefits of granting the injunction outweigh the injury to the defendant; and, (4) that the public interest will not be harmed or disserved by the relief requested. *See Id.; See also Collins v. Hamilton*, 349 F.3d 371, 374 (7th Cir. 2003). The main issue with respect to plaintiffs Rotermund and Kelly is whether they will be successful on the merits of their claim under Section 411(a)(5) of the LMRDA.

The Seventh Circuit has noted that "[j]udicial review of union disciplinary proceedings is limited. There is a general national policy against judicial interference in the internal affairs of unions. [Section 411(a)(5)] does not require the 'full panoply of procedural safeguards found in criminal proceedings. Under [Section 411(a)(5)] the evidence is sufficient if the charging party provides some evidence at the disciplinary hearing to support the charges made. Further, the courts cannot determine the scope of offenses warranting discipline." *Gustafson v. Amer. Train Dispatchers' Assoc., AFL-CIO*, 788 F.2d 1284, 1287 (7th Cir. 1986) (internal quotations and citations omitted). On the other hand, by enacting the LMRDA Congress has sought "to protect

9

05 C 2442

union members in their relationship to the union by adopting measures to insure the provision of democratic processes in the conduct of union affairs and procedural due process to members subjected to discipline." *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 194 (1967).

In order for this court to grant a permanent injunction, plaintiffs Rotermund and Kelly must first prove they are entitled to prevail on the merits of their LMRDA claim. Plaintiffs Rotermund and Kelly allege that they were not served with specific written charges as required by the LMRDA. Instead, they received letters notifying them that they had violated various sections of the Constitution and By-Laws of the Union, which, under the circumstances, was vague. When Rotermund and Kelly requested clarification of the charges against them, the Union denied their requests. While the charges against Rotermund and Kelly are arguably vague, Section 411(a)(5) "does not require the elaborate specificity of a criminal indictment." *Curtis v. Int'l Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the U.S. & Canada, Local No. 125*, 687 F.2d 1024, 1027 (7th Cir. 1982). The complaint, however, does need to contain "a detailed statement of the facts relating to the [incident] that formed the basis for the disciplinary action." *Int'l Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233, 245 (1971). In *Curtis*, the Court held that a complaint that informed the plaintiff of the union laws involved in one paragraph, and the instances of conduct that allegedly violated those laws in the next paragraph, was sufficient to provide the plaintiff with specific notice of the charges against him. *Curtis*, 687 F.2d at 1027. In this case, however, the complaint against plaintiffs Rotermund and Kelly stated the Union laws involved, but failed to provide details about the instances of conduct which violated those laws. The Union did not specify in the

written charges how failing to appear at the March 2 Executive Board meeting violated any section of the Union's Constitution and By-Laws. Nor did the Union ever indicate that it actually had any authority to require Rotermund or Kelly to appear before the Executive Board on March 2, 2005. Without any information explaining why failing to appear at the March 2, 2005 Executive Board meeting, Rotermund and Kelly could not have been expected to defend themselves effectively. In fact, when Rotermund and Kelly made two specific requests for further details about the nature of the charges against them, the Union refused to provide more information. For these reasons, the letters notifying Rotermund and Kelly of the charges against them did not meet the standards of specificity required by the LMRDA.

Next, Rotermund and Kelly argue that they were not given a reasonable time to prepare their defense for two reasons: (1) their request to postpone their trial until later in the day so that key witnesses would be available to testify was denied; and (2) their request for a copy of the trial manual was denied. Lastly, Rotermund and Kelly claim that because they did not know the specific charges against them and because they were not given a reasonable time to prepare their defense, they were denied a full and fair hearing. These arguments are especially compelling in light of the fact that the Union's trial manual provides that when key witnesses are unavailable to attend a hearing, the hearing should be postponed. In addition, the Union ordinarily holds disciplinary hearings at the end of the day to avoid this exact problem, but chose not to do so in this case. The prejudice to Rotermund and Kelly was even further compounded because they both invoked their right not to testify at the hearings, effectively precluding them from presenting any witness to rebut the charges against them. Once again, Rotermund and Kelly

twice requested that the hearing be postponed until later in the day, and twice requested that they be provided with a copy of the trial manual. Twice, the Union refused to grant these requests, and they were not even aware that their requests had been denied until the hearing itself. For these reasons, Rotermund and Kelly are successful on the merits of their LMRDA claim that they were denied a full and fair hearing.

Next, in order to obtain a permanent injunction, Rotermund and Kelly must show that remedies available at law are inadequate to compensate for their injury. The Union suggests that there is an adequate remedy for plaintiffs Rotermund and Kelly at law because if the Union attempts to enforce the fines against them through collection efforts, they will have the opportunity to dispute owing the fines. Arguing the merits of their case again is not an adequate remedy. This matter is properly before this court, and plaintiffs are entitled to prevail on the merits of the LMRDA claim. Therefore, there is no adequate remedy at law.

Lastly, Rotermund and Kelly must demonstrate that the benefits of granting the injunction outweigh the possible injury to the defendant and that the public interest will not be disserved. The Union claims that granting a permanent injunction will interfere with its ability to discipline members and enforce fines. While the Union will be prohibited from disciplining Rotermund and Kelly in this instance, that does not preclude the Union from disciplining Rotermund and Kelly, or any other member in the future, if the charges are properly presented to the accused and if the evidence against the accuse warrants such discipline. The permanent injunction merely prevents unjust discipline that is retaliatory in nature. In addition, when Congress passed the LMRDA, one of its purposes was "to eliminate or prevent improper

practices on the part of labor organizations." 29 U.S.C. 401(c). Retaliatory disciplinary actions taken by the Union against members who expressed disagreement with an officer of the Union, who was acting in his capacity as Chairman of another organization, hardly constitutes a proper practice. The permanent injunction in this case will actually serve the public's interest as Congress intended under the LMRDA.

Therefore, the motion for a permanent injunction in favor of Rotermund and Kelly with respect to Count I of the complaint will be granted.

Count II of plaintiffs' complaint alleges various violations of Thompson's LMRDA rights to participate fully in the Union and to run for and participate on the Executive Board. Plaintiff Thompson asks this court to grant a permanent injunction that would enjoin the Union from classifying Thompson as management. To determine if a motion for a permanent injunction should be granted in favor of Thompson, this court must determine that (1) he will be successful on the merits of his case; (2) that remedies available at law are inadequate to compensate for his injury; (3) that the benefits of granting the injunction outweigh the injury to the defendant; and, (4) that the public interest will not be harmed or disserved by the relief requested. *See eBay, Inc.*, 126 S.Ct. at 1839 (2006)*; See also Collins*, 349 F.3d at 374.

Plaintiff Thompson's request for a permanent injunction with respect to Count II of the complaint meets all of these requirements. First, Thompson has demonstrated he is entitled to prevail on the merits of his case. The Union has repeatedly, both directly and indirectly, tried to classify Thompson as management, which would force him out of the Union and not allow him to serve on the Executive Board of the Union. The Union even went so far as to make a

complaint with the DOL, asking the DOL to step in and declare Thompson management. The DOL, in its October 17, 2006 ruling, however, specifically stated that there was no evidence to indicate that Thompson was management. Based on this ruling by the DOL, Thompson succeeds on the merits of his claim that he is not management.

Secondly, Thompson must demonstrate that he will suffer irreparable harm should an injunction not be granted. Based on the repeated efforts of the Union to classify him as management, Thompson has demonstrated this. For instance, the day before the preliminary injunction issued by this court was to expire, members of the Union told Thompson that he would be classified as management. The Union even admits that its business manager, Christensen, and business representative, Baumann, continue to hold the personal belief that Thompson exercises management authority. In fact, as late as July 18, 2006, after a dispute that eventually involved both plaintiffs' and defendant's counsel, Christensen told Thompson that they would find a way to reclassify him as management and to revoke his membership in the Union. Thompson has a right, under the LMRDA, to participate in the Union and Union government, but based on these actions and continuing threats from Union officials, it is apparent that Thompson faces a very real threat of being reclassified as management and being prevented from participating. In addition, monetary damages would not compensate for the Union wrongfully reclassifying Thompson as management and barring his participation in the Union.

Third, the benefits of granting this injunction most definitely outweigh any harm to the defendant. The Union argues that the preliminary injunction entered by this court should be

dissolved because (1) the issuance of a permanent injunction is moot because Thompson ran for office and won a seat on the Executive Board; (2) a permanent injunction will unfairly supersede the Union's ability to enforce its Constitution and By-Laws; and (3) a permanent injunction would be too speculative in nature and too restrictive on the Union's power to enforce its own rules on its voluntary members. The court will address all of these arguments in turn. First, though Thompson ran for office and won a seat on the Executive Board, Union officials, as late as January 3, 2007, have brought disciplinary charges against Thompson, thereby continuing their efforts to prevent him from participating in the Union and to reclassify him as management. Thus, this issue is not moot. A permanent injunction will not supersede the Union's ability to enforce its Constitution and By-Laws. The injunction can be crafted to permit the Union to take appropriate action, after obtaining the court's approval, if Thompson's status changes at some time in the future. Third, there is no evidence presented to show how a permanent injunction will be too speculative in nature or too restrictive on the Union's power to enforce its own rules on other members. For these reasons, the purported harms to the defendant by granting the injunction are outweighed by the harm that would be caused to Thompson if the injunction were denied.

Lastly, granting the motion for a permanent injunction will not be harmful to the public's interest. The Union argues that granting the injunction will harm the public interest because, as the Seventh Circuit has recognized, there is an "expressed policy . . . against judicial interference with internal union affairs." *Grant v. Chicago Truck Drivers*, 806 F.2d 114, 118 (7th Cir. 1985). While this is true, Congress has also recognized that it is within the public interest and it is the

05 C 2442

responsibility of the Federal Government, to "protect employees' rights to organize, [and] choose their own representatives. 29 U.S.C. 401(a). Congress has further acknowledged that "it is essential that labor organizations . . . and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations." *Id.* Based on this LMRDA policy and the LMRDA policy previously mentioned, and based on the egregious misconduct and improper actions of the Union in this case, the public interests are supported by granting the injunction.

Based on the foregoing, the permanent injunction in favor of Thompson requested in Count II of the complaint will be granted.

**ORDERED**: The court, in this trial on the papers, finds in favor of plaintiffs John Thompson, David Rotermund, and Douglas Kelly and against defendant International Union of Elevator Constructors, Local Number 2. Plaintiffs' counsel shall submit a draft judgment and permanent injunction consistent with this memorandum and order.

ENTER:

*[signature]*

GEORGE W. LINDBERG
Senior U.S. District Judge

DATED: May 21, 2007